# Richmond

## POCAHONTAS GUANO CO. v. COLLINS-PLASS CO.

### March 16, 1916.

1. VERDICTS—*Conflicting Evidence.*—Where a controverted question of fact is fairly submitted to the jury by instructions which presented the opposing theories of the plaintiff and of the defendant, and there is sufficient evidence to support a verdict for either party, the verdict of the jury will not be disturbed.

2. FRAUD—*False Representations—Failure of Agent to Disclose Secret Instructions of His Principal—Sales.*—Where the parties do not occupy any relation of confidence towards each other, but deal at arm's length, the fact that the agent of the seller was authorized by his principal to accept an offer of the purchaser, but refused to do so and demanded and received a higher offer, does not constitute a false representation of a material fact or a failure to disclose a material fact, and the purchaser is bound to pay the advanced price offered by him.

Error to a judgment of the Corporation Court of the city of Lynchburg in a proceeding by motion for a judgment for money. Judgment for the plaintiff. Defendant assigns error.

*Affirmed.*

The following instructions were given on motion of the plaintiff:

1. The court instructs the jury that a contract for the sale and delivery of personal property, to be wholly completed within one year, need not be in writing; and if the jury believe from the evidence that the plaintiff and defendant verbally contracted for a sale by the plaintiff to the defendant of 52,000 bags, to be manufactured, delivered and paid for within one year, and that the terms of the said contract were in all respects definitely understood and agreed upon, then such verbal contract is a binding obligation upon both parties.

2. The court further instructs the jury that if they believe from the evidence that the plaintiff and defendant entered into a binding contract on the 9th day of June, 1914, and that, prior to its complete performance on the part of the plaintiff, the defendant notified the plaintiff that he would not perform the same; and that subsequent to said notice on July 6, 1914, the plaintiff advised the defendant that it accepted such renunciation as a breach of said contract, and would hold him liable for such damages as might be sustained, then the contract was at an end from that date, subject to the plaintiff's right thereunder to recover such damages as it might sustain by reason of such breach. And it thereupon became the duty of the plaintiff to so conduct itself in the exercise of a reasonable business judgment as to endeavor to make its damage from said breach as small as possible.

And if the jury further believe from the evidence that the plaintiff, upon entering into the said contract with the defendant, and in accordance with its usual custom in such cases, purchased in the open market, at the current market price, the material from which the said bags were to be manufactured; and that upon the acceptance of the plaintiff's renunciation (if there were such renunciation and acceptance), it sold said material in the open market, or otherwise disposed of it, at the then market price; and that such sale or disposition of said material was the exercise of a reasonable business judgment in the performance of its duty to endeavor to minimize its damage arising from said breach; and that the said sale or disposition was at a price different from that at which said material was purchased; and that the plaintiff is entitled to recover in this action, then such difference in the purchase and selling price of said material is an element of damages to be considered by the jury in arriving at their verdict.

3. The court instructs the jury that if they believe from the evidence that the plaintiff and defendant did, on June 9, 1914,

enter into a binding verbal contract for the sale by the plaintiff to the defendant of 52,000 fertilizer bags, the said contract to be wholly performed within a year; and that all the terms and conditions of said sale were definitely agreed upon, and that a memorandum of said terms and conditions was made in writing and left with the defendant, but was not signed by either party; and that it was the intention of the parties to subsequently reduce the terms of said verbal contract to a formal written contract to be signed by both parties; and that the plaintiff did, on June 11, 1914, transmit to the defendant a written formal contract which embodied the terms agreed upon between the parties on June 9, 1914, and set forth in said memorandum, and requested the defendant's signature thereto and promising execution thereof on its part; and that the defendant refused to sign said written contract without an alteration of the purchase price; and that plaintiff declined to agree to such alteration; and that defendant thereupon refused to sign said contract, or to recognize any obligation upon himself under the said verbal contract; and that defendant definitely advised plaintiff that he would not carry out the terms of said verbal agreement on his part; then such conduct on the part of the defendant constituted a breach of the said verbal contract, and the plaintiff thereupon became privileged to abandon the said contract on its part and, in the event of such abandonment, to recover from the defendant such damages as it may have sustained by reason of such breach.

4. The court instructs the jury that if they should find for the plaintiff they should assess its damages at the net profit which the plaintiff would have derived from a complete performance of the contract in question (if they believe from the evidence that any such net profit would have been so derived by the plaintiff); and in addition thereto the amount of loss, if any, that may have been sustained by the plaintiff in the proper sale by it of material which it had properly purchased for the purposes of the contract.

---

---

The following instructions were given on motion of the defendant:

5.   The court instructs the jury as a matter of law that until the minds of the parties are fully met, and an intention to be bound exists on the part of both parties, no contractual relation can arise from the negotiations, and no one is bound.

6.   The court instructs the jury that if they believe from the evidence that it was not the intention of the defendant to be bound by the alleged agreement unless and until the terms thereof were fully embodied in a written instrument, attested by the signatures of both parties, then they shall find that there was no contract and shall find for the defendant.   The circumstances that they do intend a subsequent writing to be drawn up is strong evidence that they do not intend to be bound by the preliminary verbal agreement as to terms.

The following instructions were asked for by the defendant but refused:

3.   The court instructs the jury that if they find from the evidence that W. C. Allen falsely represented to the defendant that defendant's offer of $90.00 per thousand for bags for August-September delivery, was refused by the Collins-Plass Co. as being too low; and if they further find from the evidence that the defendant relied upon this representation to his injury, then this constitutes such fraud as will relieve the defendant from any liability under the alleged contract.

4.   The court instructs the jury that fraud is a false representation of a material fact, or nondisclosure of a material fact under such circumstances that it amounts to a false representation, made with knowledge of its falsity, with the intention that it shall be acted upon by the other party, and which is acted upon by him to his injury.

*Harrison & Long,* for the plaintiff in error.

*Harper & Goodman,* for the defendant in error.

KEITH, P., delivered the opinion of the court.

The Collins-Plass Company entered a motion for judgment in the Corporation Court of the city of Lynchburg against A. B. Carrington, trading as the Pocahontas Guano Company, and recovered a verdict upon which judgment was rendered for $546.

The facts were as follows: In the early part of June, 1914, one W. C. Allen, of Norfolk, a salesman in the employ of the Collins-Plass Company, a corporation engaged in the manufacture of guano sacks or bags, with an office in New York city, opened a correspondence with the Pocahontas Guano Company, doing business in Lynchburg, which resulted in Allen's coming to that city to see if he could make a sale of bags. He called at the office of the Pocahontas Guano Company and introduced himself, stating that he represented the Collins-Plass Company and wanted to interest the Pocahontas Guano Company in the purchase of fertilizer bags. After going over the subject of quantities, sizes, prices, times of delivery, etc., Allen requested the Pocahontas Guano Company to make an offer which he would send in to his principal for approval. Thereupon the guano company made an offer for 50,000 bags, to be of certain sizes and prices, and to be delivered at specified times. Allen stated that he would telegraph this offer to New York. He testified that while he was authorized to accept offers and make sales, he did not usually do so without communicating with his company's head office, because prices vary on bags from day to day and sometimes from hour to hour, and he preferred to communicate offers for acceptance to the main office. He further stated that he would let the Pocahontas Guano Company know whether its offer was accepted. He left the office of the guano company and did not return that day, but it appears that he sent a cipher telegram to his principal, the Collins-Plass Company, submitting the offer made by the guano company. To this telegram the Collins-

Plass Company replied (stating only so much of the telegram as is pertinent), that he "should get better prices for nearby deliveries. Accept their offer if must, but try to do a little better for nearby." Later on the same day, however, June 8, 1914, Allen received another telegram from New York: "All right to accept Pocahontas. Collins-Plass Co., 630p."

Early next morning Allen returned to the Pocahontas Guano Company with both telegrams in his possession, the last of which authorized unconditionally the acceptance of the gauno company's offer. Instead, however, of informing the guano company of that fact, Allen told them that the offer had been accepted only in part, and as to the residue it was too low. He admitted that he purposely withheld from the guano company the fact that the offer was unconditionally accepted, and to that extent was guilty of a deception. The guano company believing that Allen had informed it in good faith of the action that the Collins-Plass Company had taken, was induced to increase its offer from that which it had previously made of $90 per thousand bags to $91 per thousand. The guano company having thus, as it claims, been induced by the representations of Allen to increase its offer, called upon him for a contract in writing signed by both parties, as it had no intention of relying upon the verbal acceptance of Allen, to which Allen made no reply other than that he had no form of written contract with him. Allen then left the office of the guano company, as it supposed, to go to his hotel and get a form of contract, fully expecting him to return and close the transaction. Allen's testimony on this point is that when the terms of sale had been agreed upon the guano company, through Mr. Carrington said to him, "How about a written contract?" and that he would like to have the contract reduced to writing and signed by them; that he recognized his request for a written contract, and told him he had none with him, but would prepare one and send it up for signature when he got back from Norfolk; and that the guano company said this would be all right. It seems that

during the progress of negotiations Allen made a memorandum of the terms that had been agreed upon, but this memorandum was never signed by either party.

There is evidence tending to prove that every essential term in the contract as to quantity, quality, style, size, and price was agreed upon, and that the order was definitely and unequivacally accepted by the Collins-Plass Company; that the terms of the order were to be reduced to formal writing for the sole purpose of preserving a permanent record thereof; that this formal writing, correctly embodying the terms of the verbal agreement, was sent to the guano company for signature; but in the meantime market quotations for burlap bags had appreciably declined and the Pocahontas Company was solicited by another dealer at a lower price; that it demanded that the Collins-Plass Company meet this lower market, and upon its refusal to do so, the Pocahontas Guano Company refused to sign the written contract submitted, purchased its supply of bags from the new dealer, and repudiated its verbal agreement with the defendant in error. This anticipatory breach of the contract was definitely accepted by the Collins-Plass Company in a letter dated July 6, 1914, written by its attorney, Messrs. Harper and Goodman, which is as follows:

"With reference to the controversy between you and the Collins-Plass Company growing out of the purchase of a quantity of sacks from the latter company and the refusal to carry out the contract on your part, we beg to advise you, as attorneys for the Collins-Plass Company, that it has accepted your renunciation of the contract as a breach thereof and will hold you responsible for the damage arising therefrom, and will assert this claim in court if necessary."

And thereupon this action was instituted to recover the ensuing damages.

We think there was evidence to go to the jury that the parties had agreed upon all the terms of the contract, and the principal controversy of fact between them is that it is claimed on behalf

of the guano company that it was not to be bound until the contract was reduced to writing and signed by the parties, while upon the other hand it is contended by the Collins-Plass Company that the verbal contract was complete in all its parts. This question was fairly submitted to the jury by instructions which presented the opposing theories of the plaintiff and the defendant, as will appear from an inspection of the instructions given at the instance of the Collins-Plass Company, especially instruction No. 1, and by instruction No. 6 given at the instance of the Pocahontas Guano Company.

The Pocahontas Guano Company relies seemingly with some confidence upon the fact that Allen, the agent of the Collins-Plass Company, through whom the negotiations on its part were conducted, did not disclose to the Pocahontas Guano Company the fact that he was authorized by his principal to accept a bid of $90 a thousand contained in the first telegram from the Collins-Plass Company, of New York, of June 8, 1914. We do not take that view of this circumstance. Neither the Collins-Plass Company nor its agent occupied any relation of confidence towards the Pocahontas Guano Company. They were dealing at arm's length. It was the duty of the agent of the Collins-Plass Company to make the best terms he could for his principal, and of this duty he was admonished in this telegram by his principal, who told him he should get better prices for nearby deliveries. What took place in reference to this matter does not constitute a false representation of a material fact or a failure to disclose a material fact, and the court was therefore right in refusing the instructions as asked.

There would have been sufficient evidence to support the verdict of the jury whether for the plaintiff or the defendant, and as we think the instructions correctly propounded the law, we must affirm the judgment.

*Affirmed.*